H. L. WOODARD, Plaintiff in Error, v. HAYWOOD COUNTY, Defendant in Error.

Western Section.   October 24, 1930.

Petition for Certiorari denied by Supreme Court, May 14, 1931.

Kinney & Carlton, of Brownsville, for plaintiff in error.
John T. Gray, of Brownsville, for defendant in error.

SENTER, J.  The plaintiff sued the defendant in a Justice of the Peace Court for an alleged balance owing to plaintiff by Haywood County under a contract for working the roads in the Eleventh Civil District of Haywood County, Tennessee, for the year 1928. The Justice of the Peace rendered a judgment in favor of the plaintiff for the sum of $220.87. The defendant appealed from this judgment to the Circuit Court of Haywood County, where the case was tried by the Circuit Judge without a jury, resulting in a judgment in

favor of the defendant. A motion for a new trial was overruled and from this action plaintiff has appealed to this court and has assigned errors. The appeal is in the nature of a writ of error.

We will refer to the parties as in the court below, H. L. Woodard, plaintiff, and Haywood County, defendant.

The real question presented on this appeal involves a construction of the contract entered into between the parties, when considered in connection with the special statute applying to Haywood County, being Chapter 525 of the Private Acts of 1921. It appears that the Supervisor of Roads and the Chairman of the County Court of Haywood County entered into a contract with plaintiff on January 25, 1928, by the terms of which plaintiff contracted and agreed to "work, maintain and keep in repair all of the public roads, bridges, and levees in the Eleventh Civil District of Haywood County, Tennessee, except the highway that is now maintained by the State, known as Highway No. 19 . . . and in the event the State should cease to maintain the said road from T. J. Mann's store to Lauderdale County line, the said party of the second part is to immediately take over said road, and to maintain same under the provisions of this contract without additional compensation, and upon the following terms, conditions and considerations hereinafter set out . . ." The question involved in this suit is with reference to the furnishing of the lumber used in repairing and maintaining the bridges on the public roads of the Eleventh Civil District. It is the contention of appellant that his contract did not require him to furnish and pay for this lumber, amounting to $220.87, but that the lumber was to be furnished by the County. It is the contention of the County that the sum agreed upon between the parties included the item of furnishing the lumber for the bridges, and that it was understood between the parties at the time the contract was entered into that under the provisions of the special Act referred to in the contract, that no money could be used in any civil district for road purposes except the amount collected from the road tax of each district, and that at the time the contract was entered into it was explained to the plaintiff the exact amount of money then on hand and all that was on hand that was available for the roads of the Eleventh District for the year 1928, and that the balance remaining at that time for said district was the sum of $1496.63; and that the plaintiff knew and understood, and that it was so explained to him that these officials of the County could not, under the law, pay any more for the roads of the Eleventh District for the year 1928, than was then available and in hand; that with this knowledge of the situation, plaintiff entered into the contract, and that the said sum of $1496.63 had been paid to him or on his orders.

The contract does not make any provision as to who was to furnish the lumber necessary to keep the bridges in this district in repair. The contract provides that it is made and entered into in accordance with Chapter 525 of the Private Acts of 1921, and further provides as follows:

"All terms, provisions and stipulations in this contract made between said parties shall be construed in conformity with the general road laws of the State of Tennessee, and of Haywood County, for the laying out and working, repairing, and classifications of roads and all to be done in accordance with the general law and the road law of Haywood County, Tennessee, and the specifications, designated widths in grade set out in said law."

The contract further provides:

". . . and all other roads heretofore worked shall be kept up and maintained as second-class roads by party of the second part as the law now provides, under the direction of the parties of the first part, and the party of the second part also agrees for the consideration hereinafter set out, to keep all roads, bridges and levees in the Eleventh Civil District of Haywood County, Tennessee, and all work to be done under the direction of James Tipton and M. B. Keathley, Supervisor.

"Party of the second part shall receive as his compensation for working and building and maintaining all the roads, and bridges, in district No. 11, the sum of $1496.63, annually, in addition to all of the labor assessed for road work in said district. The said $1496.63 is to be paid said party of the second part after the work has been approved by M. B. Keathley and upon presentation of an order to James Tipton, Chairman of the County Court of Haywood County."

Chapter 525 of the Private Acts of 1921 provides a complete scheme for the roads in counties having a population of not less than 25,385, nor more than 25,390, and appears to be applicable alone to Haywood County, and hence it is referred to as the public road law for Haywood County in this case. By Section 4 of the Act, it is provided:

"That said Supervisor shall contract for all material used in building bridges, culverts, and other structures on said roads and highways, and he can either contract said work or employ a foreman and build bridges or structures as to him may appear to the best interests of the County. That all labor hired and tools purchased or hired and all materials, etc., bought by said Supervisor for use on any roads or highways in said

County, payment therefor must be by an order upon the County Chairman or County Judge by the road Supervisor, and if said order is approved by said judge or chairman, then said judge or chairman shall issue a warrant upon the County Trustee for same.''

Section 18 provides in part as follows:

''Said contract shall include not only working the roads in such districts, but also keeping the levees in repair and building all bridges, and all lumber used shall be paid for by the County, but the contractor shall haul the same at his expense . . .''

As above stated, the contract is silent as to who shall pay for the lumber used in the building or repairing the bridges. The contract, however, does not only make specific reference to Chapter 525 of the Private Acts of 1921, but states that the contract is entered into in accordance with said Chapter 525, and provides that it shall be construed according to the terms and provisions of said Chapter 525.

Appellee contends that the contract shall be construed according to Section 5 of the Act. Section 5 provides as follows:

''That the County Court shall levy each year for road purposes an ad valorem tax of not less than five cents nor more than twenty-five cents on each one hundred dollars worth of property, both real, personal and mixed, outside of incorporated towns and cities; said tax to be collected by the County Trustee and held separate as a fund to be expended on the public roads, bridges and levees in the civil district collected. That the County Court shall levy each year for road purposes upon the capital stock of merchants outside of incorporated towns and cities for road purposes an ad valorem tax of not less than five cents nor more than twenty-five cents on each hundred dollars to be used in the same manner as above provided, the supervisor shall not spend more money in any civil district than the court had levied for said district.''

The learned trial judge by rendering judgment in favor of the County, evidently construed the contract and the sections of the private act referred to, as placing an express limitation upon the amount that the County authorities are authorized to expend for all road purposes in any civil district of the County, and that this limitation is the amount of taxes collected from the property within the respective civil districts, and that the agents of the County could not, therefore, bind the County on contracts in excess of the amount of road funds available for each district. The

assignments of error are directed to this holding by the trial judge. It is contended that the portion of Section 18 of the Act above quoted makes specific provision that the County officials named shall pay for the lumber used in bridge building or repairing. It would appear that Section 18 so provides, however, to so construe the Act, or Section 18 thereof, would create a conflict with Section 5 of the same Act. To save this conflict, and to reconcile the several sections of the Act, it is necessary that the entire Act be construed together. We are of the opinion that Section 5 of the Act specifically limits the amount that may be expended for all road purposes in the respective civil districts of the County to the amount of taxes collected under the special levy from each civil district. Section 18 does not provide that the County shall buy and furnish to the contractor, but provides that the County shall buy the lumber. In construing Section 5 and Section 18 of the Act together, we think the clear meaning of the Act is that the supervisor is required to buy all the lumber, but the lumber so bought for bridges in any civil district shall be paid for out of the funds of that district and not out of any general County funds. In other words, such lumber as is bought for any civil district shall be paid out of and charged to the road funds for that particular district, and the remainder of the fund for a particular district, or such portion as may be necessary, to be paid to the contractor. But in no event would the officials of the County named (the Road Supervisor and the County Chairman) be authorized to expend more money for the building and maintaining of roads and bridges in any one district than the amount then to the credit of the district.

We are also of the opinion that at the time the contract was entered into it was fully disclosed to the contractor the amount of funds available for all road purposes in the 11th Civil District for that year, and that this would be the total amount that could be expended for road and bridge and levee purposes in that district for that year. The fact that the amount which the county agreed to pay to the contractor was the exact amount of balance then remaining to the credit of the 11th Civil District, would well warrant the inference that the contractor understood that no additional amounts could be expended for road, bridge, and levee work in that district for that year, and with this knowledge and understanding, he entered into the contract. We are of the opinion that it was in contemplation of all the parties that the $1496.63 would be the sum total that could be expended in the 11th district for said purposes, and the parties contracted accordingly.

Where there is ambiguity in the written contract, oral evidence is admissible to explain. The intention of the partes to the contract is controlling. We think it clear from this record that it was the intention of both parties to the contract that the $1496.63 would cover all road work including necessary lumber for the bridges for that year.

It results that we find no error and the judgment is affirmed. Appellant and sureties on the appeal bond will pay the cost of this appeal.

Heiskell, J., and Steele, Sp. J., concur.